In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-2759

ADELL JONES,

*Petitioner-Appellant,*

*v.*

DON HULICK, Acting Warden,[Œ]

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 596—**Ronald A. Guzman**, *Judge.*

ARGUED MARCH 31, 2006—DECIDED JUNE 1, 2006

Before ROVNER, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Adell Jones appeals from the dismissal of his petition for a writ of habeas corpus.

In 1999, Jones waived his right to a jury trial and, following a bench trial in the Circuit Court of Cook County, Illinois, was found guilty of first degree murder and aggravated vehicular hijacking. The trial court found Jones eligible for a death sentence but declined to impose it,

---

[Œ] On April 7, 2006, the respondent-appellee filed a notice of change of custodian. Accordingly, Don Hulick, not Alan M. Uchtman, is now the proper party to this suit.

opting instead for a sentence of life for the murder plus a concurrent term of 30 years for the hijacking.

The crime was gruesome and frighteningly random. The situation started innocently enough. At 4 a.m., Jones and a friend, in Jones's brother's car, followed two women into a gas station in an attempt to obtain their telephone numbers. Jones approached the women and apparently succeeded in obtaining a phone number. When he was returning to his brother's car, a woman (simply described as a "woman with blonde hair" by the Illinois Appellate Court) asked him to tell another man, who was at the station, to stop harassing her. Jones did, and the man drove off. Then Jones saw that someone was driving away in his brother's car. Jones and his friend then hijacked the blonde woman's van in order to pursue Jones's brother's car. The woman began screaming and struggling, at which point Jones hit her with his gun, which discharged and struck her in the face. The shot was not fatal. At some point, Jones stopped at a house to speak with his cousin. When he returned to the van, he placed the woman in a headlock and shot her several times in the head, killing her.

After exhausting his state court remedies, Jones filed the present petition for a writ of habeas corpus. He claimed, in abbreviated fashion, that his counsel was ineffective and that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). United States District Judge Ronald A. Guzman ordered Jones to file an amended § 2254 petition on the form required by the District Court for the Northern District of Illinois. Although Jones filed an amended petition on the form, he wrote "See original petition . . . ." on the part that asked about his issues and grounds for relief. This petition, too, was dismissed because it violated the order dismissing the first petition, in which the judge said that "grounds contained in the original petition will not be considered if they are not included in the amended petition." The judge also stated that *Apprendi* did

not apply retroactively and could not be a basis for relief. Another amended petition and a motion for reconsideration were ultimately filed, but they were dismissed for essentially the same deficiencies noted the first time around. Jones appeals, and we granted a certificate of appealability on two issues.

(1) Whether the district court can rely on N.D. Ill. Local Rule 81.3 in dismissing his petition and deciding not to examine Jones's second claim. Specifically, whether the requirement in the rules governing § 2254 cases that the "petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule" means that prisoners must use the district court's forms and, if so, whether it is sufficient that the petition includes the information that would otherwise be written on the form.

(2) Whether Jones's sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The parties should address when Jones's sentence became final. *See Beard v. Banks*, 124 S. Ct. 2504, 2510 (2004) (a conviction becomes final when direct review to the state courts is exhausted and the time to file a petition for certiorari to the Supreme Court expires).

We then clarified the order, making clear that we intended to certify Jones's ineffective-assistance-of-counsel claim as well.

In its brief in this court, the State raises the issue of the timeliness of the petition. Jones has replied to that claim so we consider it first. Although the issue was not raised in the district court, we can affirm a district court's dismissal on any ground supported by the record, so we push ahead. *U.S. ex rel. Lewis v. Lane*, 822 F.2d 703 (7th Cir. 1987). Tangentially related to our consideration of the issue is a recent Supreme Court decision in which the Court determined that even when the state has filed an answer which does not

allege a statute-of-limitations defense (thus arguably waiving the defense), a district court has the discretion to dismiss a petition as untimely under AEDPA's one-year statute of limitations. *Day v. McDonough*, 2006 WL 1071410 (April 25, 2006). Under *Day*, a court dismissing a petition sua sponte must give the parties fair notice and an opportunity to present their positions.

In the case before us, the issue is not whether the defense can be raised sua sponte. The State has explicitly raised the issue. Jones has had an opportunity to respond, and we have listened to argument on the issue. Under these circumstances, the requirements for notice to Jones and an opportunity for him to present his position are satisfied.

But here the defense was raised for the first time on appeal. The question, then, is whether we can consider it in the first instance. In this case, we find that the practical considerations set out in *Granberry v. Greer*, 481 U.S. 129 (1987), indicate that we can. *Granberry* dealt with the state's failure to raise the defense that petitioner had not exhausted his state court remedies. The Court declined to set out hard and fast rules about when the issue could be considered for the first time in the court of appeals, and rather set out a common sense, practical, and efficient approach. Using that approach, we note, first, that in Jones's case, the issue is not difficult. The facts are established. And the issue is, for the most part, legal. Finally, another significant factor is that the State raised the defense at its first realistic opportunity: the petition was dismissed in the district court prior to an answer being filed, the answer, of course, being the usual vehicle for raising the defense. Given this situation, we consider whether the statute of limitations has run.

The Antiterrorism and Effective Death Penalty Act (AEDPA) at § 2244(d) provides for a one-year period of limitation for applications for writs of habeas corpus. As

relevant here, the date when the statute begins to run is set out in subsection (d)(1)(A): "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The time during which a petition for certiorari to the United States Supreme Court can be filed from a decision on direct review is not counted because a decision does not become final until the time for petitioning for certiorari has passed. *Anderson v. Litscher*, 281 F.3d 672 (7th Cir. 2002). The Illinois Appellate Court affirmed Jones's conviction on May 10, 2001 (*People v. Jones*, 749 N.E.2d 1021 (Ill. App. Ct. 2001)); the Illinois Supreme Court denied his petition for leave to appeal (PLA) on June 6, 2001. Jones's conviction became final on September 5, 2001, the day when his time to file a petition for certiorari to the United States Supreme Court expired.

Thirty-five days after September 5, 2001, Jones filed a postconviction motion. This act tolled the running of the AEDPA clock. Subsection (d)(2) states:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

This seemingly simple subsection has generated its share of litigation regarding when a petition is "pending."

Jones's motion for postconviction review was pending from the date it was filed, October 11, 2001, until the Illinois Supreme Court denied his petition for leave to appeal. That occurred on February 5, 2003. Jones argues that the time should also be tolled during the 90 days in which he could have petitioned—but did not—for certiorari to the United States Supreme Court. Aware that our case law goes against that position, Jones asks us to overrule our

decision in *Gutierrez v. Schomig*, 233 F.3d 490 (7th Cir. 2000).

*Gutierrez* arose in the context of the denial of a postconviction motion by the Illinois state courts. The issue was, following the denial of the postconviction motion, whether the time during which a petitioner could, but did not, file a petition for certiorari with the United States Supreme Court was excluded from the limitations period. We said it was not.

We reaffirmed *Gutierrez* in *Gildon v. Bowen*, 384 F.3d 883 (7th Cir. 2004). We returned to the issue because, after our decision in *Gutierrez*, the Supreme Court decided *Clay v. United States*, 537 U.S. 522 (2003), which, it was argued, cast doubt on our position. Ultimately, we concluded that *Clay* did not cast doubt on *Gutierrez*. *Clay* was a petition brought under 28 U.S.C. § 2255, not § 2254. Furthermore, it involved the finality of a direct appeal, not whether a postconviction motion remained pending. In the present case, we decline to disturb *Gutierrez* and *Gildon*.

We are aware that the Supreme Court has recently granted certiorari in *Lawrence v. Florida*, 2006 WL 219613 (Mar. 27, 2006) on the following question:

> Where a defendant facing death has pending a United States Supreme Court certiorari petition to review the validity of the state's denial of his claims for state post-conviction relief, does the defendant have an application pending which tolls the 2244(d)(2) statute of limitations?

However, in *Lawrence*, a petition for certiorari was filed, and in the arcane world of § 2244 we are not convinced that the ultimate decision in *Lawrence* will necessarily be controlling here because Jones never actually filed a certiorari petition. Accordingly, we find that the AEDPA statute of limitations clock began running again on Febru-

ary 5, 2003, when the Illinois Supreme Court denied Jones's PLA. His habeas petition was not filed in district court until January 21, 2004, 350 days later. Adding the 35 days between the finality of the direct appeal and the filing of his motion for postconviction relief to the 350 days means that 385 days passed. Thus, his petition is untimely.

Other questions are alluded to in this appeal, such as whether the various PLAs and motions for rehearing in the Illinois courts tolled the statute. Even though Jones cannot prevail on these issues, we will briefly mention them. For instance, Jones filed a document labeled a motion for rehearing with the Illinois Supreme Court on February 27, 2003, 22 days after the February 5 denial of his PLA from the decision on postconviction relief. Illinois law allows him 21 days in which to file such a document. His motion was not considered by the Illinois Supreme Court. Then on March 22, 2003, he filed a motion for leave to file a motion for reconsideration. That motion was denied by the Illinois Supreme Court on April 8, 2003.

Those documents do not affect the running of the AEDPA statute of limitations. In *Wilson v. Battles*, 302 F.3d 745 (7th Cir. 2002), we said that the issue of whether an application for postconviction relief is "pending" for habeas purposes is governed by state law. Illinois Supreme Court Rule 367 grants a party 21 days to petition for rehearing after a ruling. Illinois case law also provides, however, that a judgment is final when it is entered and that the filing of a petition for rehearing does not alter the effective date of the judgment *unless the court allows the petition for rehearing*. In the latter case, the date the judgment is final is the date that judgment is entered on rehearing. We concluded in *Wilson* that any provision allowing time for a rehearing petition "has no bearing on AEDPA's one-year statute of limitations." *Wilson*, at 748. Similarly, it has no bearing here.

Other courts of appeals have views different from ours. *See Serrano v. Williams*, 383 F.3d 1181 (10th Cir. 2004) (state habeas petition was pending, and the AEDPA limitations period tolled, during the 15 days following New Mexico Supreme Court's denial of petition for writ of certiorari during which petitioner could have filed motion for rehearing); *Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235 (11th Cir. 2004) (conviction became "final" upon the expiration of the 90-day period for seeking certiorari review with the Supreme Court from the denial of motion to correct his sentence); *Lookingbill v. Cockrell*, 293 F.3d 256 (5th Cir. 2002) (statute of limitation is tolled during the period in which a Texas petitioner has filed a motion for rehearing). The split in the circuits regarding tolling of the statute while an application for state postconviction review is pending is the stated reason why certiorari was granted in *Lawrence*. Nevertheless, we remain convinced that Jones's petition is untimely.

Jones next argues that he is entitled to equitable tolling of the statute. First, he says he was, as a result of a false accusation, placed in segregation for 60 days during the limitations period. During that time he had no access to the law library. Furthermore, he says, the state of Illinois limits access to the law library for all prisoners. He also contends that the state interferes with prisoners' mail. And finally, he says he was a victim of a fraud targeting Illinois prisoners. An organization called University Legal Services falsely promised to prepare and file his habeas petition.

Equitable tolling excuses an untimely filing when, despite exercising reasonable diligence, a petitioner could not have learned the information he needed in order to file on time. *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999). But equitable tolling is rarely granted, and we see nothing that would justify such a finding here.

Even were the statute of limitations not dispositive, and were we to look at the other issues raised in this appeal, we

would find Jones's petition properly dismissed, though not always on the grounds given by the district court.

As to the *Apprendi* issue, the district judge determined that the case did not apply retroactively to Jones's 1999 conviction and there was no violation because Jones had a bench trial, not a jury trial. That is half right.

*Apprendi* was decided June 26, 2000, and, at that time, Jones's case was pending on direct appeal before the Illinois Appellate Court. 749 N.E.2d 1021. Therefore, Jones can rely on *Apprendi* in support of his claim.

Were we to consider the merits of the claim, however, Jones cannot prevail. Because the merits were addressed by the state court, to prevail in the present petition Jones would need to show that the Illinois Appellate Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). He can do neither.

Jones argues that the Illinois statute under which he was sentenced violated *Apprendi* and his right to have the factual findings upon which his sentence is based proven beyond a reasonable doubt. On the particular facts of Jones's case, the Illinois Appellate Court rejected the claim in a decision well in line with Supreme Court precedent.

Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. At a bench trial, a judge must find beyond a reasonable doubt not only the elements of the offense but also facts establishing the maximum sentence. *See United States v. Brough*, 243 F.3d 1078 (7th Cir. 2001).

In this case, as we have noted, the judge found Jones eligible for the death penalty but declined to impose it due to the presence of various mitigating factors. Jones then received a natural life sentence for the murder.

The version of the statute under which Jones was sentenced, 730 ILCS 5/5-8-1(a)(1)(b) (1999), provided for the imposition of a natural life sentence "if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or . . . that any of the aggravating factors listed in [720 ILCS 5/9-1] are present . . . ." An aggravating factor exists if the victim was killed in the course of another felony, including aggravated vehicular hijacking. Following *Apprendi*, the statute was amended to require that the factfinding, whether by a judge or jury, be made beyond a reasonable doubt. *See* 730 ILCS 5/5-8-1(a)(1)(b)(2005). Because his case was decided before the statute was amended, Jones argues that the aggravating factor on which his life sentence was based was not found beyond a reasonable doubt as *Apprendi* requires. Implicit in the argument is a contention that his jury waiver somehow did not extend to the sentencing proceeding.

The Illinois Appellate Court found that Jones waived his right to a jury at all stages of the proceedings. The court then found that the aggravating factor on which the life sentence was based was that the murder was committed in connection with an aggravated vehicular hijacking. The court concluded:

> Where the trial court sentenced defendant to natural life imprisonment pursuant to an aggravating factor listed in section 9-1(b) for which he waived his right to a jury and the State proved beyond a reasonable doubt that defendant committed aggravated vehicular hijacking, *Apprendi* does not require the reversal of defendant's sentence.

749 N.E.2d at 1032. The obvious problem Jones encounters on his *Apprendi* claim is that he waived the jury, the judge found him guilty beyond a reasonable doubt of aggravated vehicular hijacking at the guilt phase of the trial, and that was the basis for his life sentence. Necessarily, then, the sentencing factor—aggravated vehicular hijacking—was found beyond a reasonable doubt, whether the statute then required it or not. The decision of the Illinois Appellate Court did not come to a conclusion which in any way violates Supreme Court precedent.

The other issue on which we granted a certificate of appealability was whether it was proper to dismiss the ineffective-assistance-of-counsel claim because, rather than writing it out on the form required by District Court for the Northern District of Illinois, Jones incorporated by reference the previous statement of his claim. We are somewhat baffled as to why the district judge dismissed the ineffective assistance claim on this basis but reached the merits of the *Apprendi* claim, which was also incorporated by reference.

Rule 2 of the Rules Governing Section 2254 Cases states that a petition must "substantially follow either the form appended to these rules or a form prescribed by a local district-court rule." Local Rule 81.3 of the Northern District of Illinois states that petitions shall be "submitted on forms approved by the Executive Committee." The rule says nothing about a prohibition on incorporating other documents by reference. The instruction sheet provided with the form, however, advises a petitioner that he "may not answer a question by referring to another document." Then the instructions go on to explain the manner in which other documents should be attached to the petition. There are significant questions, in our view, as to whether the instructions to the form are clear, whether they are binding, and whether it was appropriate to invoke the rule, espe-

cially to dismiss the ineffective assistance claim when the *Apprendi* claim was considered.

Looking to the merits, we note that the Illinois Appellate Court carefully considered the claim. The court determined that it was a claim subject to analysis under *Strickland v. Washington*, 466 U.S. 668 (1984), rather than *United States v. Cronic*, 466 U.S. 648 (1984). The court then proceeded to analyze the claim under the second prong of the *Strickland* test: whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. That is a proper statement of Supreme Court precedent.

We also see no problem with the conclusion that there was no reasonable probability that the result would have been different but for counsel's performance. Jones confessed to the crime in great detail after receiving *Miranda* warnings. Furthermore, the complaints Jones makes are more relevant to a jury, rather than a bench trial. It could well have been, for instance, trial strategy in a bench trial to limit cross-examination, assuming that the judge's evaluation of the testimony would be more sophisticated than a jury's and that a judge might be less impressed by trial theatrics. Finally, we note that defense counsel was successful on a highly significant issue. He convinced the judge that mitigating factors existed to prevent the imposition of the death penalty. Even had Jones's petition been timely, it would properly have been dismissed.

In conclusion, we return to the fact that Jones's petition was, in fact, untimely, and for that reason the order dismissing the case is AFFIRMED. We have added our discussion on the merits just in case we are wrong about what will result from the Supreme Court's decision in *Lawrence*.

No. 04-2759                                                        13

A true Copy:

    Teste:

 

              _____
              *Clerk of the United States Court of*
              *Appeals for the Seventh Circuit*